# UNITED STATES DISTRICT COURT
### for the
### NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| American Casualty Company of Reading, Pennsylvania, | ) ) ) | Civil Action No. 2:12-cv-02414-SGC |
| Plaintiff, | ) ) | **Opposed; Oral Argument Requested** |
| v. | ) ) | |
| David L. Allen, *et al.*, | ) ) | |
| Defendants. | ) ) | |

### PLAINTIFF AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA'S MOTION TO STRIKE THE AFFIDAVITS OF DONALD W. BENDURE AND DR. JOHN JAMES FARMER, III, SUBMITTED IN OPPOSITION TO AMERICAN CASUALTY'S MOTION FOR SUMMARY JUDGMENT

Richard A. Simpson (admitted *pro hac vice*)
John E. Barry (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Telephone:  (202) 719-7000
Facsimile:  (202) 719-7049

Ann McMahan
SIMPSON, MCMAHAN, GLICK & BURFORD PLLP
2700 Highway 280 South
Suite 203, West Wing
Birmingham, AL 35223
Phone:  (205) 876-1601
Fax:     (205) 876-1616

## PRELIMINARY STATEMENT

Plaintiff American Casualty Company of Reading, Pennsylvania ("American Casualty") respectfully submits this Motion to Strike the Affidavits of Donald W. Bendure and John James Farmer, III submitted as Exhibits A and G in support of Claimants' Opposition to American Casualty's Motion for Summary Judgment. The Affidavits of Mr. Bendure and Dr. Farmer are inadmissible and should be stricken for the reasons set forth below.[1]

## ARGUMENT

**I.    The Bendure and Farmer Affidavits Should Be Stricken Because Their Testimony Was Never Disclosed In Response to American Casualty's Discovery Requests Prior To The January 1, 2014 Deadline For "All Discovery."**

The analysis and opinions of Mr. Bendure and Dr. Farmer were not disclosed in response to American Casualty's discovery requests or otherwise prior to the January 1, 2014 deadline established by the Court for "*all discovery,*" which extended the original discovery deadline by six months.  Order (Sept. 17, 2013) (Doc. 69) (emphasis added); *see also* Order (Jan. 17, 2013) (Doc. 48) ("*All discovery* related to the limited issue of whether the claims at issue are 'related' must be commenced in order to be completed no later than July 31, 2013."

---

[1]    American Casualty's Motion to Strike is opposed; a true and correct copy of e-mail correspondence with Claimants' counsel regarding the admissibility of the Bendure and Farmer Affidavits is attached hereto as Exhibit A.  Although the objections set forth herein are more than sufficient to support the conclusion that the Affidavits should be stricken, they are not exhaustive in light of Claimants' belated disclosures.  Accordingly, American Casualty reserves all rights in that regard.

(emphasis added)).[2]   American Casualty's Interrogatory No. 11—served on March 26, 2013—specifically requested that Defendants "(a) *describe in detail all evidence*; and (b) identify all Documents that an Underlying Claimant intends to rely upon in this litigation."   Similar to the Court-ordered deadline for "all discovery," this comprehensive request encompassed, as it says, "all evidence." Like Rule 56 itself, American Casualty's requests make no distinction between expert and non-expert evidence and, particularly in light of the narrow focus of the parties' dispute, American Casualty was under no obligation to parse its requests further.   Accordingly, the Bendure and Farmer Affidavits, as well as the previously undisclosed materials upon which they rely, should be precluded on the grounds that they constitute a transparent and manifestly improper attempt to sand-bag American Casualty well past the eleventh hour in this case with testimony and documents that were never produced in discovery.[3]

---

[2]      *See also* American Casualty's Document Request No. 8 (Mar. 26, 2013) (requesting production of "all documents that the Underlying Claimant intends to rely upon in this litigation.").   True and correct copies of American Casualty's March 2013 interrogatories and document requests are attached hereto as Exhibit B.

[3]      Notably, the Claimants' July 31, 2013 Motion to Extend the Discovery Period (Doc. 58)—which resulted in the extension of the deadline for "all discovery" to January 1, 2014—is bereft of any suggestion that Claimants intended to rely on any purported experts in this litigation. *See, e.g., D2K, Inc. v. Am. Suzuki Motor Corp.*, 2012 WL 4339386, at *2 (N.D. Ala. Sept. 13, 2012) (striking expert report when "defendant simply allowed [its expert] to rely on relevant but undisclosed data in preparing his expert report."); *Pigott v. Sanibel Devel., LLC*, 576 F. Supp. 2d 1258, 1272 (S.D. Ala. 2008) (striking "newly-raised evidence" when proponent "failed to provide timely supplementation of its responses to Interrogatories"); *Go Med. Indus. Pty, Ltd. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003) ("Defendants' inaccurate discovery responses misled the Plaintiffs and the Court as to what issues would be disputed [and]

Confronted with similar attempts at sand-bagging, courts have not hesitated to reject "expert" evidence disclosed for the first time on summary judgment. *See, e.g.*, *Moussazadeh v. Tex. Dep't of Criminal Justice*, No. 07-574, 2011 WL 4376482, at *6 (S.D. Tex. Sept. 20, 2011) (striking expert affidavits first offered in response to summary judgment when court had "ordered that '[d]iscovery shall be completed by [an earlier date]'" and party had thus "engaged in discovery in violation of the Court's unambiguous order"), *rev'd on other grounds*, 703 F.3d 781 (5th Cir. 2012); *Conley v. Keys*, No. 09-1299, 2011 WL 3819437, at *6 (C.D. Ill. Aug. 29, 2011) (disallowing expert affidavit in summary-judgment briefing when "there was a general date set for the end of discovery" and the party "provided no explanation for his failure to disclose this expert witness or provide her report prior to the close of discovery").  In light of this gamesmanship, the Affidavits of Mr. Bendure and Dr. Farmer are not properly before the Court. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

---

what discovery requests were necessary … ."); *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 369 (M.D. Ala. 2001) ("The federal discovery rules place an affirmative duty upon a party and its counsel to produce not only responsive materials of which they are aware, but also those which they reasonably ought to have been aware.").

## II.    The Testimony Of Mr. Bendure And Dr. Farmer Should Be Stricken On The Independent Ground That Their Testimony Is Manifestly <u>Improper And Inadmissible.</u>

It is axiomatic that, on summary judgment, the Court is permitted to rely only upon documents and testimony that are admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2), (4); *Rowell v. BellSouth Corp.*, 433 F. 3d 794, 800 (11th Cir. 2005).  As set forth in Fed. R. Civ. P. 56(c)(4):

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Applying this standard, the testimony of Mr. Bendure and Dr. Farmer is improper and inadmissible.   With respect to expert opinions in particular, "[a] district court judge is to act as a 'gatekeeper' . . , only admitting such testimony after receiving satisfactory evidence of its reliability."  *Gardner v. Aloha Ins Servs.*, 2013 WL 839884, at*5 (N.D. Ala. Mar. 4, 2013).

In general, expert testimony may not be admitted unless the witness is qualified by virtue of his knowledge, education, training or experience.  Fed. R. Evid. 702.  Moreover, the expert must be qualified *to render the specific opinions at issue*; it is not sufficient that the expert generally has knowledge or experience in the area or industry.  *See, e.g., Talking Walls, Inc. v. Hartford Cas. Ins. Co.*, No. 02-41, 2005 WL 6011243, at *2 (N.D. Fla. July 5, 2005); *Medina v. Louisville Ladder, Inc.,* 496 F. Supp. 2d 1324, 1327 (M.D. Fla. 2007).  "While experience

4

alone may render an expert qualified to give opinions on a specific topic, the experience must be relevant to his proposed testimony." *Currie v. Chevron U.S.A., Inc.*, No. 05-1610, 2006 WL 5249707, at *11 (N.D. Ga. Sept. 19, 2006).  In turn, the burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.  *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).  The proponent of expert evidence must demonstrate, and the court must find, not only that the expert is qualified, but also that his or her opinions are reliable and are relevant to or "fit" the particular facts of the case.  *Id.* This requires that the expert's methodology be reliable, that it be reliably applied to the facts, and that the expert's testimony assist the trier of fact to understand the evidence or determine a fact in issue.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590-92 (1993).[4]

## A. <u>Mr. Bendure's Testimony Is Inadmissible.</u>

Claimants characterize Mr. Bendure without elaboration as a "qualified expert."  Opp. at 29 (Doc. 99).  Mr. Bendure is not a lawyer; he is not a percipient

---

[4]      While the Supreme Court's decision in *Daubert* focused on expert methodology, the Court subsequently emphasized that the requirement of reliability encompasses not only the expert's methodology, but how the expert applied the methodology to reach a conclusion.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'"  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005).

witness to the drafting or formation of the Policy at issue; and his Affidavit identifies no personal knowledge (beyond his alleged review of transcripts and documents of record in this litigation, *see* Opp. Ex. G ¶ 3 (Doc. 100-7), of the events that gave rise to the Underlying Actions.  He does not identify any relevant, prior experience with policies issued to professional pharmacists.  Instead, he is an insurance consultant engaged by the Claimants to repeat their arguments regarding the Policy and other documents of record.  His purported "analysis" merely parrots or embellishes the arguments in the Claimants' brief, and is comprised entirely of (1) factual arguments and conclusions that he is no more qualified to make than any other person; and (2) legal arguments and opinions that he is clearly not qualified to render.  For example, Mr. Bendure purports to draw conclusions from the record materials in this case that—not surprisingly—repeat factual contentions that have been advanced by Claimants' counsel.   *Compare* Opp. Ex. G *with* Opp. at 26-30.  Mr. Bendure also advances opinions on ultimate questions of law in this case that he is clearly not competent to make.   *See, e.g.*, Opp. Ex. G ¶ 7 ("In my opinion, Section IV, Exclusion C, … does not operate to strip the named insured of the protection for product liability exposure ... ."); *id*. ¶ 8 ("[I]n my opinion, … the applicable limit … would be … $3 million aggregate.").

Mr. Bendure's testimony is plainly inadmissible because, as one district court judge in the Eleventh Circuit has pointedly observed, "[e]ach courtroom

comes equipped with a 'legal expert, called a judge,'" and it is the judge's role to rule on the legal issues in the case.  *Johnson v. Bush*, No. 00-3542, 2002 WL 34355953, at *1 (S.D. Fla. Apr. 19, 2002).  Cases so holding are legion.[5]  Indeed, courts have previously refused to consider *Mr. Bendure's testimony* for precisely this reason.  *See* Order, *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, No. 07-303, at *4 (M.D. Tenn. Aug. 11, 2011) (quashing "Mr. Bendure's report" for being "replete with legal conclusions regarding the nature and enforceability of the insurance policy between the parties") (copy attached hereto as Exhibit C); *id.* at *6 (noting "the pervasive conclusions of law found in Mr. Bendure's report" and ruling that "each of the opinions expressed in Mr. Bendure's report reaches legal conclusions, and is therefore inadmissible under FRE 704"); *G-I Holdings v. Hartford Fire Ins. Co*, No. 00-6189, 2007 WL 842009, at *10

---

[5]     *See, e.g., Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (district court abused its discretion by permitting an expert to opine about the scope of coverage under an insurance policy); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1258 (2d Cir. 1987) (affirming district court's refusal to allow expert testimony regarding a party's contractual obligations); *Clarendon Am. Ins. Co. v. Bayside Rest., LLC*, No. 05-1662, 2006 WL 2729486, at *2 (M.D. Fla. Sept. 25, 2006) ("any expert testimony on the interpretation of an insurance policy is 'inadmissible and patently unacceptable.'" (quoting *Dawe's Labs., N.V. v. Commercial Ins. Co., N.J.*, 313 N.E. 2d 218, 226 (Ill. App. Ct. 1974)); *Nova Cas. Co. v. Waserstein*, No. 04-20755, 2005 WL 5955694, at *1-2 (S.D. Fla. Sept. 7, 2005) (refusing to allow expert witness to opine regarding interpretation of insurance policy); *Emp'rs Reinsurance Corp. v. Mid-Continent Cas. Co.*, 202 F. Supp. 2d 1212 (D. Kan. 2002) (improper for purported insurance expert to offer opinion on ultimate question of coverage); *N. River Ins. Co. v. Emp'rs Reinsurance Corp.*, 197 F. Supp. 2d 972 (S.D. Ohio 2002) ("expert opinions which express a legal conclusion are inadmissible."); *Young v. State Farm Mut. Auto. Ins. Co.*, No. 97-24, 1999 WL 33537177, at *2 (N.D. Miss. Feb. 16, 1999) (purported insurance expert cannot offer testimony on questions of law); *Breezy Point Cooperative, Inc. v. Cigna Prop. & Cas. Co.*, 868 F. Supp. 33, 36 (E.D.N.Y. 1994) ("an expert is prohibited from offering his opinion as to the legal obligations of parties under a contract").

(D.N.J. Mar. 16, 2007) (characterizing Mr. Bendure's theories as "unpersuasive" and stressing that "this Court is required to interpret the plain meaning of the insurance policies themselves"), *aff'd*, 586 F.3d 247 (3d Cir. 2009).

Mr. Bendure's analysis and opinions improperly invade the province of the Court to rule on a legal issue. *See* Fed. R. Evid. 702(a) (expert testimony is admissible only if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."); *see also* Fed. R. Civ. P. 56(c)(4) (affidavit must set out "facts that would be admissible in evidence" and show that affiant is "competent to testify on the matters stated."). Mr. Bendure is not a lawyer and, putting aside that his 'legal opinions' would be inadmissible in any event, this Court can read the Policy and reach its own conclusions as to the coverage it provides. There are more than a dozen attorneys of record for the Claimants in this litigation who are fully capable of arguing the merits of this case on their own. Accordingly, Mr. Bendure's Affidavit should be rejected on the independent ground that it is inadmissible.

### B. Dr. Farmer's Testimony Is Inadmissible.

While Dr. Farmer purports to weigh in on the allegations in the Underlying Actions "from an epidemiological standpoint," Opp. Ex. A ¶ 16 (Doc. 100-1), he is no more competent to issue an opinion on an ultimate question of law in this case than Mr. Bendure is, and his "six outbreaks" theory has little if anything to do with

8

the alleged failures of Mr. Allen at Meds I.V., but instead begins and ends with the lone, unscientific, and undisputed fact that the Claimants received TPN at six different hospitals located in the Birmingham area.   Stripped to its essence, Dr. Farmer's "six outbreaks" theory merely echoes the undisputed fact that the allegedly contaminated TPN compounded at Meds I.V. was administered to the claimants in the Underlying Actions at six different hospitals, and adds nothing to the pleadings and primary evidence of record.

Because Dr. Farmer offers no other reason for fixing "six" as the magic number of outbreaks, his proffer is neither the sort of "scientific, technical, or other specialized knowledge" contemplated by the Federal Rules of Evidence, nor is it probative of the legal issue in dispute, because he simply ignores the overwhelming commonalties that tie the allegations in the Underlying Actions to Mr. Allen and the Meds I.V. compounding laboratory at 102 Oxmoor Road, Suite 118.  *See* Fed. R. Evid. 702(a), 703; *see, e.g., Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (citing "matters of geography" as susceptible to judicial notice). Dr. Farmer's opinions should therefore be rejected on the grounds that they are divorced from the controlling legal standard imposed by the Policy and obscure the overwhelming commonalities between and among the Underlying Actions *against Mr. Allen* by simply ignoring them.  Expert testimony should be excluded where the expert has engaged in an unjustifiable extrapolation from an accepted premise

to an unfounded conclusion, or where the "analytical gap" between the premise and conclusion is so great as to render the opinion unreliable. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (conclusions and methodology "are not entirely distinct from one another ... . A court may conclude that there is simply too great an analytical gap between the data and the opinion offered."). Accordingly, Dr. Farmer's Affidavit is inadmissible and should be precluded. *See, e.g., Allison*, 184 F.3d at 1320-21 (excluding testimony because of a lack of "fit" with the issues in the case).

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court should strike the Affidavits of Mr. Bendure and Dr. Farmer on the grounds that (1) neither of these witnesses was disclosed in response to American Casualty's discovery requests on or before the January 1, 2014 discovery cut-off; and (2) the testimony of Mr. Bendure and Dr. Farmer is manifestly inadmissible and improper.

Respectfully submitted,

Ann McMahan
SIMPSON, MCMAHAN, GLICK &
BURFORD PLLP
2700 Highway 280 South
Suite 203, West Wing
Birmingham, AL 35223
Phone:  (205) 876-1601
Fax:      (205) 876-1616

*Attorneys for American Casualty
Company of Reading, Pennsylvania*

s/ John E. Barry
Richard A. Simpson (admitted *pro hac vice*)
John E. Barry (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Telephone:  (202) 719-7000
Facsimile:  (202) 719-7049

10

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 7th day of July, 2014, a true and correct copy of the foregoing was served on the following counsel of record by overnight mail and by filing the same with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Robert R. Riley Jr., Esq.
RILEY & JACKSON PC
3530 Independence Drive
Birmingham, AL 35209

Patrick M. Lavette, Esq.
DAVENPORT, LAVETTE & CLECKLER P.C.
3829 Lorna Road, Suite 302
PO Box 360186
Birmingham, AL 35236

Roger D. Burton, Esq.
ROGER D. BURTON, P.C.
1905 – 14th Ave., South
Birmingham, AL 35205

D. Leon Ashford, Esq.
Stephen Shay Samples, Esq.
James R. Moncus III, Esq.
HARE WYNN NEWELL & NEWTON
2025 3rd Avenue, North, Suite 800
Birmingham, AL 35203-3331

Sam H. Franklin, Esq.
LIGHTFOOT FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203-3200

11

Kenneth E. Riley, Esq.
FARRIS, RILEY & PITT, LLP
The Massey Building, Suite 400
2025 Third Avenue North
Birmingham, AL 35203

Zebulon Little, Esq.
GRIFFITH, LITTLE & LOWRY
409 1st Avenue SW
Cullman, AL 35055

Robert P. Bruner, Esq.
BELT LAW FIRM PC
2204 Lakeshore Drive, Suite 208
Birmingham, AL 35209-6739

William P. Traylor, Esq.
YEAROUT & TRAYLOR, P.C.
3300 Cahaba Road, Suite 300
Birmingham AL 35223

Jason A. Shamblin, Esq.
CORY, WATSON CROWDER & DEGARIS PC
2131 Magnolia Avenue South, Suite 200
PO Box 55927
Birmingham, AL 35255-5972

Jarrod D. Nichols, Esq.
JARROD D. NICHOLS, P.C.
P.O. Box 26365
Birmingham, AL 35260-0365

William L. Bross, Esq.
Gayle L. Douglas, Esq.
HENINGER GARRISON DAVIS, LLC
2224 – 1st Avenue North
Birmingham, AL 35203

Michael C. Shores, Esq.
2205 Morris Avenue
Birmingham, AL 35203

Service also was effected on the following by U.S. Mail, properly addressed and postage paid:

Mr. David Allen
1716 Powder Plant Road
McCalla, AL  35111-3514

Wesley Chadwick Cook, Esq.
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
218 Commerce St.
Montgomery, AL 36103-4160

Byron McMath, Esq.
MCMATH LAW FIRM, P.C.
301 West 20th Street
Jasper, AL 35501

Jason P. Knight, Esq.
KNIGHT & KNIGHT
210 Second Street S.E.
Cullman, AL 35055

s/ John E. Barry

*Attorney for American Casualty Company of Reading, Pennsylvania*

13