

FILED
2015 Sep-29  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

AMERICAN CASUALTY COMPANY OF )
READING, PENNSYLVANIA )
          )
     **Plaintiffs,** )
          )
     **vs.** )     **CASE NO. 2:12-CV-2414-SLB**
          )
DAVID L. ALLEN; et al., )
          )
     **Defendants.** )

## MEMORANDUM OPINION

This case is presently pending before the court on plaintiff's Objections, (doc. 109),[1] to the Magistrate Judge's Report and Recommendation, (doc. 108). Plaintiff, American Casualty Company of Reading, Pennsylvania, filed a Complaint for Declaratory Judgment naming as defendants its insured, David L. Allen, and the individuals who have filed suit against Allen and his employer, Meds I.V. in Alabama state courts [state-court plaintiffs].[2] (*See generally* doc. 1.) The

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2] The state-court plaintiffs are Bonnie Allinder; Willie Jean Armstrong; Anna Calkins; Dillie Rae Culberson, as Executrix of the Estate of Eleanor Ray Harrison; David Bernard Evans, as Administrator of the Estate of Columbus Evans; Lillie Ann Fancher and Joe Fancher, as Parents and Co-Administrators of the Estate of Darryl Joe Fancher; Wanda Fowler, as Personal Representative of the Estate of Robert Ernest Fowler; Ida Gipson; Lelon Harris; Shirley Haynesworth, as Power of Attorney for and on behalf of Todd Hammond; Todd Hammond; Rebecca Johnson, as Personal Representative of the Estate of Ora Mae Metcalfe; Jeremiah Jones, as Personal Representative of the Estate of Flossie Mae Scott; V. Michele Leonard, on behalf of Edith Carter; Edith Carter; Patricia Ann Mainor, as Administratrix of the Estate of Frances Bray Jones; Donald J. Mottern, as Administrator of the Estate of Lavonne S. Mottern; Alice F. Nixon; Chester Robinson; Lydal

state-court lawsuits arise out of injuries allegedly caused by Allen, in whole or in part, while he was

acting as a pharmacist; at that time Allen was covered by a professional liability policy issued by

American Casualty.  In its Complaint for Declaratory Judgment –

> American Casualty seeks a judgment declaring that the Underlying Actions constitute
> "related claims" as that term is defined under the Policy.  Because the Underlying
> Actions arise from the same alleged act, error or omission, or[,] at a minimum,
> "related acts, errors or omissions," the Underlying Actions must be considered a
> single claim, subject to the $1 million indemnity limit of liability for "each claim" under
> the Policy's professional liability coverage part.

(*Id*. ¶ 1 at 3.)

On American Casualty's Motion for Summary Judgment, the Magistrate Judge issued a

Report and Recommendation, which recommended dismissal of this case as "premature and unripe."

(Doc. 108 at 10.)  Then American Casualty filed its Objections to the Report and Recommendation.

(Doc. 109.)  Based upon the court's consideration of all the materials in the record, including the

Objections and the Report and Recommendation, as well as the relevant caselaw, the court is of the

opinion that plaintiff's Objections are due to be overruled and the Magistrate Judge's

Recommendation is due to be accepted as modified.

---

Robinson, as Personal Representative of the Estate of Jewell Robinson; Linda L. Huebner, as
Administrator of the Estate of Joseph Scarborough; Cora P. Sheppard, as Personal Representative
of the Estate of Lunna Powell; Steven C. Smith, as Personal Representative of the Estate of Dale
McAfee Tidwell; Lori Ellyn Steber ; Gina Yeager; Barbara Young, as Personal Representative of
the Estate of Mary Ellen Kise; and Harvey R. Young, as Administrator of the Estate of Carol Ann
Young.  (*See* docs. 1, 51.)

2

## I.  STANDARD OF REVIEW

The district court reviews de novo those parts of the Report and Recommendation to which a party has objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").  Other parts of the Report and Recommendation to which a party has not objected may be reviewed for plain error or manifest injustice.  *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983)(citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (11th Cir. 1982)).   Upon review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## II.  STATEMENT OF FACTS

In 2011, numerous individuals were exposed to the bacteria, *Serratia marcescens*.  Of the 19 cases of S. marcescens blood stream infections [BSI], 17 cases were identified between March 1, 2011 and March 15, 2011; the remaining two cases occurred in January and February 2011. (Doc. 100-1 at 20.)  Nine patients died and "the median time between the initial *S. marcescens* culture and death was 1 day."   (*Id*.)  The *S. marcescens* BSIs occurred in six Alabama hospitals; all these hospitals had given the infected patients total parenteral nutrition [TPN] compounded by Meds I.V.  (*Id*. at 19.)  TPN was prescribed daily and delivered to the hospitals each night.  (*Id*.)

The following state-court cases were filed on behalf of 25 patients:

3

*Bonnie Allinder, Ida Gipson, Anna Calkins, and Willie Jean Armstrong v. Meds I.V. LLC, et al.*, No. CV-2011-900247 (Ala. Cir. Ct. [Jeff. Cnty – Bessemer Div.] May 2, 2011)(*see* doc. 80-4 at 185-97);

*Dillie Ray Culberson, as Executrix of the Estate of Eleanor Ray Harrison v. Meds I.V. LLC, et al.*, No. CV-2011-902407 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] July 5, 2011)(*see* doc. 80-4 at 132-137);

*David Bernard Evans, as Administrator of the Estate of Columbus Evans v. Meds I.V., LLC, et al.*, No. CV-2011-901213 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 8, 2011)(*see* doc. 80-3 at 319, 324-35);

*Lillie Ann and Joe Fancher, as Parents and Co-Administrators of the Estate of Darryl Joe Fancher v. Meds I.V., LLC, et al.*, No. CV-2011-902641 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] July 25, 2011)(*see* doc. 80-3 at 352-64);

*Wanda Fowler as Personal Representative of the Estate of Robert Ernest Fowler v. Meds I.V. LLC, et al.*, No. CV-2011-900218 (Ala. Cir. Ct. [Jeff. Cnty – Bessemer Div.] April 19, 2011)(*see* doc. 80-3 at 388-97);

*Jewel Ann Harris, as administratrix of the Estate of Lelon Harris v. Meds I.V., et al.,*, No. CV-2011-901136 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 4, 2011)(*see* doc. 80-4 at 159-64);

*Shirley Haynesworth, as Power of Attorney for and on behalf of Todd Hammond, and Todd Hammond v. Meds I.V. LLC, et al.*, Case No. 2011-901139 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 4, 2011)(*see* doc. 80-3 at 284-97);

*Rebecca Johnson as Personal Representative of the Estate of Ora Mae Metcalfe v. Meds I.V., LLC, et al.*, No. CV-2011-901416 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 22, 2011)(*see* doc. 80-4 at 219-25);

*Jeremiah Jones as Personal Representative of the Estate of Flossie Mae Scott v. Meds I.V., LLC, et al.*, No. CV-2011-901597 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] May 6, 2011)(*see* doc. 80-4 at 211-17);

4

*V. Michele Leonard o/b/o Edith Carter v. Meds IV, LLC, et al.*, No. CV-2011-903345 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] Sept. 20, 2011)(*see* doc. 80-3 at 375-81);

*Patricia Ann Mainor, as Administratrix for the Estate of Frances Bray Jones v. Meds I.V. LLC, et al.*, No. CV-2011-901313 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 15, 2011)(*see* doc. 80-4 at 145-50);

*Donald J. Mottern, as Administrator of the Estate of Lavonne S. Mottern v. Meds I.V., LLC, et al.*, No. CV-2011-901140 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 4, 2011)(*see* doc. 80-3 at 264-77);

*Alice F. Nixon v. Meds I.V. L.L.C., et al.*, No. CV-2011-00652 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 8, 2011)(*see* doc. 80-4 at 44-50);

*Chester Robinson v. Meds I.V. LLC, et al.*, No. CV-2011-901196 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 7, 2011)(*see* doc. 80-4 at 80-90);

*Lyndal Robinson as Personal Representative of the Estate of Jewell Robinson v. Meds I.V. LLC, et al.*, No. CV-2011-900047 (originally filed in Ala. Cir. Ct [Chilton Cnty] on April 14, 2011)(doc. 80-4 at 2-9);

*Lisa L. Huebner, as Administrator of the Estate of Joseph Scarborough v. Meds I.V. LLC, et al.*, No. CV-2011-901137 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 4, 2011)(*see* doc. 80-4 at 22-27; see also doc. 51);

*Cora P. Sheppard, as Personal Representative of the Estate of Lunna Powell v. Meds I.V. LLC, et al.*, No. CV-2011-901122 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 1, 2011)(*see* doc. 80-4 at 61-66);

*Steven C. Smith, as Personal Representative of the Estate of Dale McAfee Tidwell v. Meds IV, L.L.C., et al.*, No. CV-2011-901408 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 22, 2011)(*see* doc. 80-4 at 52-59);

*Lori Ellyn Steber v. Meds I.V. LLC, et al.*, No. CV-2011-903859 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] October 28, 2011)(*see* doc. 80-3 at 409-21);

*Gina Yeager v. Meds I.V. LLC, et al.*, No. CV-2011-901248 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 12, 2011)(*see* doc. 80-4 at 97-109);

*Barbara Young as Personal Representative of the Estate of Mary Ellen Kise v. Meds I.V. LLC, et al.*, No. CV-2011-900094 (Ala. Cir. Ct. [Autauga Cnty] March 31, 2011)(*see* doc. 80-4 at 227-33);

*Harvey R. Young, as administrator of the Estate of Carol Ann Young v. Meds IV, L.L.C., et al.*, No. CV-2012-901287 (Ala. Cir. Ct. [Jeff. Cnty – Birmingham Div.] April 24, 2012)(*see* doc. 80-4 at 235-41).

American Casualty issued Healthcare Providers Professional Liability Insurance Policy No. 0411989207 to Allen for the policy period April 9, 2010, to April 9, 2011.   (Doc. 1-1 at 3.)   The policy provides that American Casualty "will pay all amounts, up to the [policy limit], that [Allen] become[s] legally obligated to pay as a result of a professional liability claim arising out of a medical incident by [Allen] or by someone for whose professional services [Allen is] legally responsible." (*Id.* at 15.)   Allen was employed as the supervising pharmacist for Meds I.V.  (Doc. 80-3 at 140-41 [David Allen Depo. at 103-04].)

Under the terms of the policy:

A.  Each Claim

The limits of liability stated on the certificate of insurance as applicable to "each claim" means that our liability for such claim shall not exceed such stated amount.

B.  Aggregate

Subject to provision A, above, limits of liability stated on the certificate of insurance as applicable to "all claims in the aggregate" means that our liability shall not exceed such stated amount.

. . .

E.  Related Claims

If related claims are made against [the insured], all such claims shall be considered a single claim, and the limits of liability applicable to the policy period in force when the act, error or omission, or earliest of related acts, errors or omissions, occurred.

(Doc. 1-1 at 22.)  Under the terms of the policy, "related claims" are "all claims arising out of a single act, error or omission or arising out of related acts, errors or omissions in the rendering of professional services or placement services," and "'Related acts, errors or omissions' mean[s] all acts, errors or omissions in the rendering of professional services or placement services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision."  (*Id*. at 18-19.)

### III.  DISCUSSION

Based on its review of the record, the court agrees with the Magistrate Judge that this matter should be dismissed pending resolution of the underlying state court actions.  The court finds that the issue of whether the underlying lawsuits are related must await the determination of the cause of each state-court plaintiff's injury and, if so, whether Allen is liable.

As a preliminary matter, the court notes that American Casualty objects to the Report's contention that resolution of the underlying litigation, or even a confession of liability, must precede a determination of the coverage limit.  (Doc. 109 at 11-14.)  In fact, it argues that "[a] settlement with Mr. Allen will be nearly impossible to achieve if the parties have no idea what American Casualty's

7

ultimate indemnity obligation is under the Policy."[3]   (*Id*. at 14 n.3.)  In its Objections, American

Casualty argues:

> Under Alabama law, the assertion of a claim against a policyholder implicates its insurer's "contractual duties with regard to settlement."  *See Fed. Ins. Co. v. Travelers Cas. & Sur. Co.*, 843 So. 2d 140, 143-44 (Ala. 2002).  And "[i]n evaluating the merits of the litigation, an insurer is bound to consider its potential exposure."  *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1275 (10th Cir. 1989).  In this case, however, American Casualty "is incapable of doing so until it knows the ***possible extent*** of its liability in the . . . litigation."  *Id*. at 1275.  Whether Mr. Allen can call upon $3 million of insurance coverage or only $1 million is a concrete issue that affects how American Casualty can best meet its obligations under the Policy in consultation with its insured.  That is enough for purposes of Article III.

(*Id*. at 11 [emphasis added].)

The court notes that American Casualty is not prohibited from "consider[ing] its ***potential***

exposure," *Kunkel*, 866 F.2d at 1275 (emphasis added), without a decision on its declaratory

judgment.  As it concedes its "potential exposure" is $3 million dollars.  What American Casualty

seeks is a pretrial determination of the upper limit of its policy based on a decision by this court that

all the underlying state-court actions are "related," and the $1 million policy limit applies.  The

Eleventh Circuit, in an unpublished opinion,[4] noted that "advisory relief is unavailable through the

---

[3]The court rejects as unwarranted the proposition that American Casualty has "no idea what [its] ultimate indemnity obligation is under the Policy."  Although it may not have a court-ordered declaration of its potential indemnity obligation, it is not without adequate resources and experience to arrive at a reasonable prediction of its ultimate indemnity liability for purposes of settlement negotiations.

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*.**"  11th Cir. R. 36-2

declaratory judgment procedure" when an insurer had sought "a hypothetical advisory opinion to assist it in its ongoing settlement negotiations." *Owners Ins. Co. v. Parsons*, 610 Fed. Appx. 895, 898 (11th Cir. 2015)(citing *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945)). The court held the insurer's "inability to negotiate a settlement with confidence, in and of itself, is no legal injury." *Id.* at 897 (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005)).

Therefore, American Casualty's inability to negotiate a settlement of the underlying claims, based on its lack of a court order that the underlying claims are, or are not, related, does not constitute a legal and concrete injury.

Nevertheless, assuming some sort of injury, the court turns to the issue of whether the determination of the policy limits is ripe at this stage of the proceedings.[5]  In Alabama, "Whether there is a duty to indemnify under the policy will depend on the facts adduced at the trial of the action . . . ." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1013 (Ala. 2005). This court has held:

> The duty to indemnify does not rise out of the existence of a duty to defend. *See*, *e.g.*, *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1349 (M.D.

---

(emphasis added).

[5]Although there may be some dispute as to whether the court's determination of this declaratory judgment is premature is an issue of jurisdiction (ripeness) or discretion, (*see* doc. 109 at 4-5 and n.2), this dispute is not relevant because either way, this case is not going forward. *See Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg.*, 387 F. Supp. 2d 1205, 1211-12 (S.D. Ala. 2005)("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability to the movants.)

Ala.1997)("Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the insured is ultimately established by what is developed at trial.").  "Although the bare allegations of the complaint may trigger an insurer's duty to defend its insureds, '[t]he duty to pay ... must be analyzed separately.'" *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 792 (Ala.2002) (quoting *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1167 (Ala.1985)).  "The insured's conduct rather than the allegedly injured person's allegations determine whether the insurer has a duty to indemnify." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1066 (Ala.2003)(quoting *City Realty, Inc. v. Continental Cas. Co.*, 623 So. 2d 1039, 1047 (Ala.1993)).

*Alabama Gas Corp. v. Travelers Cas. and Sur. Co.*, 990 F. Supp. 2d 1163, 1167 (N.D. Ala. 2013)(Johnson, J.); *see State Farm Fire and Cas. Co. v. Lacks*, 840 F. Supp.2d 1292, 1295-96 (M.D. Ala. 2012).

And, whether claims are related for the purpose of determining policy limits requires a finding of the proximate cause of the insured's liability for each state-court plaintiff's injury. *See Pennsylvania National Mutual Casualty Ins. Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173, 1178 (11th Cir. 2015)("When an insured causes multiple injuries, coverage is determined on an injury-by-injury basis, and the insurer is obligated only to indemnify for damages arising out of the covered injuries.").  If liability for each claim is based on the same cause, Alabama courts find the claims are "related;" if not based on the same proximate cause, the claims are not related.

In *United States Fire Insurance Co. v. Safeco Insurance Co.*, 444 So. 2d 844 (Ala.1983), the Alabama Supreme Court addressed the meaning of the term "occurrence"[6] for purposes of determining the deductible due from the insured.  In

---

[6]"While the difference between a 'claim' and an 'occurrence' can be crucial because it may determine whether and when the insurer's obligation is triggered, in analyzing 'related acts'

that case, the Court concluded that *a single occurrence encompassed all the damage proximately resulting from each incident*. The *United States Fire Insurance* Court stated that, under Alabama law, "'[a]s long as the injuries stem from one proximate cause there is a single occurrence,'" 444 So. 2d at 846 (quoting *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir.1982)); however, "'if the cause is interrupted or replaced by another cause, the chain of causation is broken and more than one accident or occurrence has taken place.'" 444 So. 2d at 847 (quoting 8A Long, *Insurance Law and Practice* § 4891.25 at 18 (1981)).

*St. Paul Fire & Marine Ins. Co. v. Christiansen Marine, Inc.*, 893 So. 2d 1124, 1137 (Ala. 2004)(footnote and emphasis added).

American Casualty argues that the determination of whether the underlying state-court claims are related can be made on the pleadings alone. The court disagrees.

American Casualty argues:

. . . [T]he Report wrongly concludes that the "related claims" issue in this action turns on the actual facts of the underlying cases rather than the "claims" articulated in the underlying pleadings. Thus, the Report maintains, resolution of this case must await conclusion of the underlying litigation through trial to a final judgment or settlement. [(Doc. 108 at 8.)] This conclusion cannot be squared with either Alabama law or the plain language of the Policy.

As a general proposition, it is true that, in a particular case, whether an insurer has any duty to indemnify may "turn[] on the underlying facts showing liability on the claims." *Id*. But that truism ignores that, in evaluating whether "claims" are "related" for purposes of determining the available policy limits, it is immaterial whether the allegations of fact underlying the "claims" are meritorious or not. And even assuming that there were some facts outside the four corners of the underlying complaints that mattered, in this case the Report's determination that American Casualty's suit was

_____

provisions, courts typically employ the same analysis regardless whether the issue is the number of 'claims' or 'occurrences.'" *Worthington Federal Bank v. Everest National Ins. Co.*, No. 5:14-CV-0244-JEO, 2015 WL 3898093, 16 n.6, ___ F. Supp. 3d _____ (N.D. Ala. June 4, 2015).

never ripe to begin with comes after the defendants were permitted to conduct a full
year of discovery into the "related claims" issue over American Casualty's objection
and file merits briefing on summary judgment.

(Doc. 109 at 16-17.)

The parties do not disagree as to the policy limits; they disagree that the underlying state-court claims are related. To decide this issue, the court must determine whether some or all of the state-court claims arise from the same proximate cause, which is a fact determination. The policy does not require that all claims *allege* the same type of wrongdoing to be considered related; instead to constitute a "related claim," the policy requires that the "claims," as a matter of fact, "aris[e] out of a single act, error or omission or aris[e] out of related acts, errors or omissions in the rendering of professional services." (Doc. 1-1 at 18.) And, "related acts, errors or omissions in rendering professional services" is defined in "acts, errors or omissions . . . that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." (*Id.* at 19.) Therefore, if the "acts, errors, or omissions" giving rise to liability are logically or causally separate from one another, the claims are *not* related.

As set forth above, the state-court plaintiffs and their decedents were injured at different time periods, at different hospitals, and, perhaps, by different strains of bacteria. These claims may be related if the alleged injuries arise from the same cause – a single act, error, or omission or related acts, errors, or omission connected by a common fact, circumstance, situation, transaction, event, advice, or decision. Given the differences in the circumstances of the alleged injuries, the

determination of the cause of each state-court plaintiff's injury, which is essential to establishing whether the claims are related or not under the policy, cannot be established as a matter of law by the pleadings.

American Casualty argues that the court may decide its declaratory judgment action based on the pleadings; it argues:

> Moreover – and contrary to the Report's conclusion – the Alabama Supreme Court evaluates "related claims" issues with reference to the allegations in the underlying pleadings. Thus, in *Continental Casualty Co. v. Brooks*, 698 So. 2d 763 (Ala. 1997)(per curiam), the Alabama Supreme Court was charged with determining "whether the plaintiff's malpractice claims ar[o]se out of or [we]re 'connected with the same' wrongful acts or ar[o]se out of 'related wrongful acts.'" *Id*. at 764. The *Brooks* Court concluded that the claims were related – meaning that only one "per-claim" limit was exposed – and in doing so it looked at the claimant's allegations "[i]n her complaint, as amended . . . ." *Id*. at 764 & n.2; *see also id*. ("[Insurer] and [policyholder] argue that *the wording of this claim* shows that the alleged legal malpractice arose out of one continuing act, although the attorney made separate billings. We agree.") (emphasis added); *id*. at 764 ("[T]he plaintiff, in stating her claim against [the policyholder], alleged . . . ."); *accord Eureka*, 873 F.2d at 234 (looking at "[t]he alleged breaches of fiduciary duty in [the underlying litigation]")(emphasis added).  [footnote]

> The Report's position that the "related claims" question in this case "turns on the *facts* of the insured's liability to the claimants" thus ignores the plain language of the Policy and misapprehends the governing law.  [(Doc. 108 at 8.)]  And, as in *Brooks*, the abundant, undisputed record evidence in this case compels the conclusion that the "related claims" question should be decided in American Casualty's favor.  The near-identical "wording of th[e] claims," *Brooks*, 698 So. 2d at 764, demonstrates that they "are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision."  Policy, Professional Liability Coverage Part, Section IV, 5.  The claimants conceded as much in their opening pleadings, admitting that they "make substantially similar factual allegations and plead comparable causes of action."

(Doc. 109 at 16-17 [footnote omitted].)

The court finds that the *Brooks* decision is distinguishable from the circumstances of this case. First, there was only one claimant with claims only against the insured in *Brooks*. In the instant action there are many injured claimants and they allege causes of action against Allen, as well as numerous other entities, including Allen's employer. Second, all of the injuries suffered by Brooks related to legal advice received from the insured that resulted in the preparation of different legal documents. In the instant action, the state-court plaintiffs and their decedents were injured at different times[7] and in different places; each state-court plaintiff's ***injury*** is distinct from the ***injuries*** suffered by other state-court plaintiffs.[8] Although the trial of the underlying state-court cases may result in a finding that the TPN received by all state-court plaintiffs or their decedents was contaminated by or as the result of the same wrongdoing of Allen, these trials may also show that Allen committed separate and distinct acts of wrongdoing that were not part of the same chain of causation. Third, and perhaps most importantly, Brooks settled her claims, before trial, for "the policy limits;" there was no finding of fact as to the cause and amount of Brooks's damages. In the instant action, the underlying state-court actions are still pending and the state-court plaintiffs and the insured have the opportunity to prove the cause of the alleged injuries and the amount of each state-court plaintiff's damages without regard to the terms or limits of the policy.

_____

[7]The court notes that most of the state-court plaintiffs allege injuries occurring in March 2011.

[8]However, the court notes that the cause of some or all of the injuries maybe the same or related.

14

The *Brooks* decision does not stand for the proposition that a court may determine the limits of the insurer's duty to indemnify based upon the pleadings only and before establishment of liability of the insured.  Alabama courts and courts in this Circuit have repeatedly stated that whether an insurer has a duty to indemnify is a question of fact best left to determination following the underlying trial and not a declaratory judgment action.  *See*, *e.g.*, *American Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 Fed. Appx. 807, 810 n.4 (11th Cir. 2013)("American Safety also sought a declaratory judgment that, in addition to a lack of any duty to defend Taylor, it lacked any duty to indemnify Taylor as well. The district court correctly declined to consider that claim because it was premature and did not constitute a present case or controversy."); *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984)("The Fifth Circuit Court of Appeals has cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of the apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured." (citing *American Fidelity & Casualty Co. v. Pennsylvania Thresherman & Farmers' Mutual Casualty Co.*, 280 F.2d 453 (5th Cir. 1960))); *American Fidelity*, 280 F.2d at 461;[9] *State Farm*

---

[9]The *American Fidelity* court stated:

> What we are saying is that if each of the Damage Plaintiffs win, if neither of the defendants Clay or Britt succeed, if facts are not developed requiring or permitting decisive findings, express or implied, on the status of the truck or its driver as they might bear upon related provisions of the two insurance policies, problems now academic may then be actual.  These might include the question whether Pennsylvania has primary and American excess coverage, whether both are liable pro rata, or at all, or whether either, short of payment and a standing growing out of subrogation, either equitable or conventional, may fasten itself upon the other's contract as a sort

15

*Fire and Cas. Co. v. GHW*, 56 F. Supp. 3d 1210, 1215 (N.D. Ala. 2014)("It is too early for the Court to address the indemnity issue because the state court action against GHW III remains pending.")(citations omitted); *All Seasons Window & Door,* 387 F. Supp. 2d at 1210-11 ("Although *American Fidelity* does not preclude jurisdiction over an insurer's declaratory action brought to determine its indemnity obligations before its insured has been cast in judgment, it counsels strongly against the exercise of jurisdiction in such circumstances.").

The determination of whether claims are related informs the determination of the policy limits available to indemnify the insured.  If the insured is not liable, the insurer has no duty to indemnify – whether the claims are related or not.  If the insured is liable to some but not all claimants and for an amount less that the single claim limit, the court never needs to decide the upper limits of the policy at issue.  Only if the total amount for which the insured is held liable to more than one state-court plaintiff exceeds the per claim limit will the issue of the insurer's policy limit for related claims be ripe. And, only then will a declaratory judgment action seeking a determination of the issue of relatedness of the state-court claims be ripe, and then, the issue will be whether the state-court plaintiffs' injuries for which the insured is liable arose from the same cause.

―――――――――――――――――――

of ubiquitous third party beneficiary.  But it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass.  The mandatory obligation of a District Court to accept and determine a suit for declaratory relief is not commensurate with the full scope of a 'case or controversy' within the constitutional sense.

*American Fidelity*, 280 F.2d at 461 (footnote and citations omitted).

Clearly, and contrary to American Casualty's position, whether the claims of the numerous state-court plaintiffs are related must await the resolution of Allen's liability in the state-court cases and the determination of the cause of the state-court plaintiffs' injuries before the determination of whether some or all of the state-court claims are related.

Therefore, American Casualty's Objections to Magistrate Judge's Report and Recommendation, (doc. 109), will be overruled and the Magistrate Judge's Recommendation to dismiss this action without prejudice will be accepted.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that American Casualty's Objections, (doc. 109), are due to be overruled and the Magistrate Judge's Report and Recommendation is due to be accepted, (doc. 108).    An Order dismissing, without prejudice, American Casualty's Complaint for Declaratory Judgment, (doc. 1),  and denying as moot its Motion for Summary Judgment, (doc. 80), and its Motion to Strike the Affidavits of Donald W. Bendure and Dr. John James Farmer, III, Submitted in Opposition to American Casualty's Motion for Summary Judgment, (doc. 102), will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 29th day of September, 2015.


*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE

17